**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: CREDIT DEFAULT SWAPS ANTITRUST LITIGATION | MDL NO. 2476 |

**RESPONSE OF PLAINTIFFS UNIPENSION FONDSMÆGLERSELSKAB A/S;
ARKITEKTERNES PENSIONSKASSE; MP PENSION – PENSIONSKASSEN
FOR MAGISTRE & PSYKOLOGER; PENSIONSKASSEN FOR
JORDBRUGSAKADEMIKERE & DYRLÆGER AND MF GLOBAL CAPITAL LLC
IN SUPPORT OF MOTION FOR CENTRALIZATION IN THE NORTHERN DISTRICT
OF ILLINOIS**

Plaintiffs Unipension Fondsmæglerselskab A/S, Arkitekternes Pensionskasse, MP Pension – Pensionskassen for Magistre & Psykologer, Pensionskassen for Jordbrugsakademikere & Dyrlæger (collectively, "the Danish Plaintiffs"), plaintiffs in *Unipension Fondsmæglerselskab A/S, et al. v. Bank of America Corporation, et al.*, No. 13-cv-04979 (N.D. Ill.), and Plaintiff MF Global Capital LLC ("MF Global"), plaintiff in *MF Global Capital LLC v. Bank of America Corporation, et al.*, No. 13-cv-05417 (N.D. Ill.), submit the following Interested Party Response in support of the Motion for Centralization in the Northern District of Illinois (Dkt. No. 1) filed by Plaintiff Sheet Metal Workers Local No. 33 Cleveland District Pension Plan ("Sheet Metal Workers").

I.  **INTRODUCTION**

To date, six class action complaints have been filed on behalf of a nationwide class of participants in the Credit Default Swaps ("CDS") market. Five of these lawsuits are pending in the Northern District of Illinois. One is pending in the Southern District of New York.

Defendant dealers are some of the largest financial institutions in the world, who make markets for and act as counterparties in the over-the-counter ("OTC") Credit Default Swaps market. Defendants International Swaps and Derivatives Association and Markit Group are

standard-setting and data entities, respectively, who, along with the Defendant dealers, collectively dominate and control OTC trading in CDS. Plaintiffs allege that Defendants conspired to unreasonably restrain competition in the trading of CDS with the Class by restricting access to a CDS clearinghouse, blocking the entry of would-be competitors that were prepared to independently establish and operate a CDS exchange and clearinghouse, preventing brokers from providing exchange-like services to non-dealers, and denying non-dealers equal access to CDS bid and ask prices. As a result, competition in the CDS market was unlawfully restrained, causing the Class members to pay more when they bought CDS and less when they sold CDS.

The Danish Plaintiffs and MF Global agree with Plaintiff Sheet Metal Workers that consolidation of the six related actions in the Northern District of Illinois is appropriate, for the following reasons:

- The first-filed and most procedurally advanced action is pending in the Northern District of Illinois;

- Five of the six related actions are pending in the Northern District of Illinois;

- Relevant documents and witnesses will be found in the Northern District of Illinois;

- The Northern District of Illinois is convenient for the geographically dispersed parties;

- The Northern District of Illinois has more favorable docket conditions than the Southern District of New York; and

- The Northern District of Illinois and the judges presiding over the related cases filed in that district have significant experience managing multidistrict litigation.

## II.   ARGUMENT

The Northern District of Illinois is the forum where the first-filed lawsuits have been filed. Individually, and collectively, the five cases in the Northern District of Illinois have

proceeded with greater speed and efficiency than the one case pending in the Southern District of New York. Judicial economy would be served by consolidating the Credit Default Swaps Antitrust Litigation in the Northern District of Illinois. Moreover, as some of the largest and most well-financed and geographically diverse financial institutions in the world, Defendants cannot plausibly argue that litigating in the Northern District of Illinois would be inconvenient or burdensome. Indeed, they do not. Defendants have taken no position on whether this case should be centralized in the Northern District of Illinois or the Southern District of New York. The *only* party in any of the six related lawsuits that is advocating centralization in the Southern District of New York is Plaintiff Value Recovery Fund LLC and *only* because it is the sole party to maintain its lawsuit in that District. Moreover, despite Plaintiff Value Recovery's argument that Defendants' contacts with New York City and the convenience of the Southern District of New York to Defendants (including those Defendants headquartered internationally) favors centralization in the Southern District of New York,[1] not even Defendants have made that argument. Rather, Defendants acknowledge that neither of these facts makes centralization of this case in the Southern District of New York any more appropriate than the Northern District of Illinois.[2]

---

[1] *See* Value Recovery Fund LLC's Response in Opposition to the Motion of the Sheet Metal Workers for Transfer and Centralization of Related Action in the Northern District of Illinois and in Support of Transfer to the Southern District of New York, at 8-11, MDL Docket No. 2476 (Dkt. No. 79) (Aug. 7, 2013).

[2] *See* Defendants' Memorandum in Support of Consolidation and Response to Movant's Request for Centralization in the Northern District of Illinois, at 5, MDL Docket No. 2476 (Dkt. No. 80) (Aug. 7, 2013). ("The Northern District of Illinois is a convenient forum for all parties . . . .").

### A. The Northern District of Illinois Is the District of the First-Filed and Most Procedurally Advanced Action

The first complaint alleging a conspiracy to unreasonably restrain competition in the CDS market was filed by Plaintiff Sheet Metal Workers on May 3, 2013, No. 13-cv-3357 (N.D. Ill.). Thereafter, the following lawsuits were filed:

| | |
|---|---|
| July 11, 2013 | *Unipension Fondsmæglerselskab A/S, et al. v. Bank of America Corporation, et al.*, No. 13-cv-04979 (N.D. Ill.); |
| July 16, 2013 | *Value Recovery Fund LLC v. JP Morgan Chase & Co., et al.*, No. 13-cv-4928 (S.D.N.Y.); |
| July 29, 2013 | *LBBW Asset Management Investmentgesellschaft GmbH v. Citibank, N.A., et al.*, No. 13-cv-5413 (N.D. Ill.); |
| July 29, 2013 | *MF Global Capital LLC v. Bank of America Corporation, et al.*, No. 13-cv-05417 (N.D. Ill.); and |
| August 7, 2013 | *Essex Regional Retirement System v. Bank of America Corporation, et al.*, No. 13-cv-____ (N.D. Ill.).[3] |

The sole lawsuit pending in a District other than the Northern District of Illinois is the third lawsuit filed alleging a conspiracy by Defendants to restrain competition in the CDS market. This lawsuit – *Value Recovery Fund LLC* – was filed more than two months after the first-filed action by Sheet Metal Workers, and to date there has been relatively no advancement of that case. An Initial Pretrial Conference is set for October 2 and no defendant has yet to enter an appearance in that action.

By comparison, the first-filed action, the *Sheet Metal Workers* lawsuit, has progressed significantly. For instance, counsel have entered appearances for at least sixteen of the defendants' counsel, many of whom have been admitted on a *pro hac vice* basis. On July 31,

---

[3] The *Essex Regional Retirement System* case was originally filed in the Northern District of New York on August 1, 2013. However, On August 7, 2013, Plaintiff dismissed that lawsuit and re-filed it in the Northern District of Illinois. At the time of this writing, that case is not yet available on Pacer and the case number is not available.

2013 and August 7, 2013, the Honorable Milton I. Shadur granted the Danish Plaintiffs' and MF Global's, respectively, Motions for Reassignment. At present, the *Unipension*, *Sheet Metal Workers* and *MF Global* cases are pending before Judge Shadur. Likewise, the Defendants have collectively filed a Motion for Reassignment to have all of the cases consolidated and transferred to the Honorable Amy St. Eve for "the longer term."[4]

The Panel has repeatedly favored transfer to the Northern District of Illinois where, as here, the District is the site of the first-filed and most procedurally advanced action. *See In re Discover Card Payment Protection Plan Marketing & Sales Practices Litig.*, 764 F. Supp. 2d 1341, 1343 (J.P.M.L. 2011) ("The Northern District of Illinois, where the first-filed and most procedurally advanced action is pending, stands out as an appropriate transferee forum."); *In re Navistar 6.0 L Diesel Engine Prods. Liab. Litig.*, 777 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) (selecting the Northern District of Illinois as the transferee district because, *inter alia*, the first-filed action was pending there).

The *Sheet Metal Workers* lawsuit is no exception, as there has been more activity by the Court and the parties than in the cases filed in the Southern District of New York. In addition to the parties moving diligently to consolidate the cases before one Judge, the parties in the first-filed *Sheet Metal Workers* lawsuit have negotiated and entered into a stipulation regarding the timing of Defendants' response to the Amended Complaint in light of the Sheet Metal Workers' pending Motion for Centralization in the Northern District of Illinois. No such progress has been made in the sole case pending in the Southern District of New York. The procedural advancement need only be "slight" in order to favor one forum over another. *In re L'Oreal Wrinkle Cream Sales & Mktg. Practices Litig.*, 2012 U.S. Dist. LEXIS 177694, at *3 (J.P.M.L.

---

[4] *See* Defendants' Motion for a Finding of Relatedness and Reassignment Pursuant to Local Rule 40.4, at 1-2, No. 1:13-cv-03357 (Dkt. No. 108) (Aug. 1, 2013).

5

Dec. 12, 2012) (selecting a transferee forum in which the cases were "slightly more procedurally advanced"); *see also In re Midland Nat'l Life Ins. Annuity Sales Prac. Litig.*, 484 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) (selecting a forum where the pending action was "somewhat more procedurally advanced").

No serious argument can be advanced that the litigation in the Southern District of New York is more procedurally advanced than the five matters pending in the Northern District of Illinois. For this reason, the Northern District of Illinois is the more appropriate forum for this dispute.

B.  **The Majority of Actions Are Pending in the Northern District of Illinois**

"The Panel often considers the location of the majority (or significant minority) of pending actions…" *In re Gerber Probiotic Prods. Mktg. & Sales Litig.*, 2012 U.S. Dist. LEXIS 149742, at *6-7 (J.P.M.L. Oct. 16, 2012). Here, a clear majority of the actions filed to date – five out of six actions – were filed in the Northern District of Illinois. This fact also militates in favor of consolidation of the related actions in the Northern District of Illinois. *See In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374 (J.P.M.L. 2011) (transferring cases to the Northern District of Illinois, in part, because ten of the 28 related actions were pending there); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 657 F. Supp. 2d 1371, 1372 (J.P.M.L. 2009) (transferring cases to the Northern District of Illinois because, *inter alia*, "seven of the ten known actions are already pending there"); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (transferring cases to the Northern District of Illinois when five of eleven related actions were pending there).

### C. Relevant Documents and Witnesses Will Be Found in the Northern District of Illinois

Defendants' conspiratorial conduct to restrain competition is focused on Defendants' efforts to exclude market makers from CDS clearing and, in particular, Defendants' conspiracy to prevent the Chicago Mercantile Exchange ("CME") and Citadel LLC—both Chicago-based financial institutions—from bringing electronic exchange-based trading to the CDS market. CME and Citadel's electronic exchange for Credit Default Swaps would have posed a significant threat to Defendant dealers' grip on CDS market making and clearing. Thus, these two Chicago-based financial institutions will play a prominent role in this case, and the facts and witnesses relative to this issue are centralized in the Northern District of Illinois. *See In re Dairy Famers of Am., Inc. (Cheese) Antitrust Litig.*, 626 F. Supp. 2d 1348 (J.P.M.L. 2009) (transferring cases to the Northern District of Illinois in an action alleging manipulation of cheese and milk futures on the Chicago Mercantile Exchange).

In addition, co-conspirator Intercontinental Exchange, Inc. maintains a major office at 353 North Clark Street, Chicago, Illinois. Given the presence of Intercontinental Exchange, Inc., the CME, and Citadel in Chicago, relevant documents and witnesses will be found within the Northern District of Illinois. The presence of relevant documents and witnesses in the Northern District of Illinois has repeatedly been cited by the Panel as a factor favoring transfer to that District. *See Discover Card*, 764 F. Supp. 2d at 1343 (transferring cases to the Northern District of Illinois because, *inter alia*, "likely witnesses, documents and other information sought in discovery may be found there"); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 657 F. Supp. 2d at 1372 (transferring actions to the Northern District of Illinois, in part, because relevant documents and witnesses were likely located in and around the district).

The Northern District of Illinois is a convenient District for this litigation because a significant number of documents and witnesses are found there.

D.  **The Northern District of Illinois Is Convenient for the Many Geographically Dispersed Parties**

The parties in the related actions are geographically diverse, residing in locations throughout the United States and Europe. The Northern District of Illinois is a major metropolitan area serviced by two international airports, O'Hare and Midway. The multitude of flights offered by O'Hare and Midway make the Northern District of Illinois an extremely accessible forum for the parties. Indeed, the Panel has repeatedly recognized that the Northern District of Illinois provides an accessible and convenient forum for geographically dispersed parties. *See In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (recognizing the Northern District of Illinois as a "convenient and accessible forum" and transferring actions there); *Discover Card*, 764 F. Supp. 2d at 1343 (describing the Northern District of Illinois as a "geographically convenient location for this litigation"); *In re Aftermarket Filters Antitrust Litig.*, 572 F. Supp. 2d 1373, 1374 (J.P.M.L. 2008) ("Considerations of convenience and accessibility also favor the Northern District of Illinois"); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1381 (J.P.M.L. 2010) (describing the Northern District of Illinois as a "geographically central forum"); *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 716 F. Supp. 2d 1363, 1364 (J.P.M.L. 2010) ("[T]he Northern District of Illinois provides a convenient forum."); *In re McDonald's Corp. Promotional Games Litig.*, 192 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (transferring cases to the Northern District of Illinois because, *inter alia*, "the geographically central district will be a convenient location for a litigation already nationwide in scope").

### E. The Northern District of Illinois Has More Favorable Docket Conditions Than the Southern District of New York

Another factor militating in favor of consolidation in the Northern District of Illinois is that docket conditions are more favorable than those in the Southern District of New York. *See In re Tyco Int'l Ltd. Secs. Litig.*, 2000 U.S. Dist. LEXIS 5551, at *3 (J.P.M.L. Apr. 26, 2000) (selecting a transferee forum with a "significantly less congested" docket than other potential transferee districts). The most recent judicial caseload statistics, as of March 31, 2013, show that there are now 667 pending cases per judge in the Southern District of New York, which is over 100 cases more than the 563 pending cases per judge in the Northern District of Illinois. Also, the median time from filing to disposition of civil cases in the Southern District of New York is 8.3 months, versus 6.6 months in the Northern District of Illinois.[5]

Moreover, the Northern District of Illinois, which has 33 judges, currently has 18 pending MDL actions, while the Southern District of New York, which has 47 judges, has 42 MDL actions currently pending.[6]

### F. The Judges in the Northern District of Illinois Have Significant Experience Managing Multidistrict Litigation

The Panel regularly considers the experience of the potential transferee forum and judges in managing complex litigation. *See In re Janus Mutual Funds Investment Litig.*, 310 F. Supp.2d 1359, 1361 (J.P.M.L. 2002) (selecting a transferee forum with "the experience to steer this litigation on a prudent course"). The Northern District of Illinois has considerable experience in managing MDL proceedings and complex antitrust litigation.

---

[5] *See* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-march-2013.pdf&page=1.

[6] *See* MDL Statistics Report, Distribution of Pending MDL Dockets, *available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-10-2013.pdf; *https://www.ilnd.uscourts.gov/Judges.aspx*; *http://www.nysd.uscourts.gov/judges/District*.

The three judges currently assigned to the Credit Default Swap cases in the Northern District of Illinois have each successfully handled MDL proceedings. *See In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (assigning a consolidated action alleging a conspiracy to fix prices of lysine to Judge Shadur); *In re Text Messaging Antitrust Litig.*, 588 F. Supp. 2d 1372, 1373 (J.P.M.L. 2008) (assigning to Judge Kennelly an antitrust class action alleging that defendants conspired to fix, maintain and/or stabilize the price of text messaging services sold in the United States); *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (describing Judge Kennelly as "an experienced MDL jurist" and transferring related actions to him); *In re Navistar 6.0 L Diesel Engine Prods. Liab. Litig.*, 777 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) (transferring related actions to Judge Kennelly and describing him as a judge "who can effectively manage this litigation"); *In re McDonald's Corp. Promotional Games Litig.*, 192 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (transferring related actions to Judge Kennelly); *In re AT&T Mobility Wireless Data Services Sales Tax Litigation*, MDL No. 2147 (assigned to Judge St. Eve); *In re Ocean Bank*, MDL No. 1778 (assigned to Judge St. Eve).

As such, the Judges currently assigned to the CDS antitrust lawsuits in the Northern District of Illinois are well-suited to handle this litigation, as proven by their prior and current handling of MDL actions.

### III. CONCLUSION

For the foregoing reasons, the Danish Plaintiffs and MF Global respectfully request that the Panel centralize the related actions in the United States District Court for the Northern District of Illinois.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| /s/ David A. Young | /s/ George A. Zelcs |
| Daniel A. Small | George A. Zelcs |
| David A. Young | Korein Tillery LLC |
| COHEN MILSTEIN SELLERS & TOLL PLLC | 205 North Michigan Plaza |
| | Suite 1950 |
| 1100 New York Avenue, NW, Suite 500 West | Chicago, Illinois 60601 |
| Washington, DC 20005 | Tel: (312) 641-9750 |
| Tel: (202) 408-4600 | Fax: (312) 641-9751 |
| Fax: (202) 408-4699 | gzelcs@koreintillery.com |
| dsmall@cohenmilstein.com | |
| dyoung@cohenmilstein.com | |
| | |
| ***Attorneys for Plaintiffs Unipension Fondsmæglerselskab A/S; Arkitekternes Pensionskasse; MP Pension – Pensionskassen for Magistre & Psykologer; Pensionskassen for Jordbrugsakademikere & Dyrlæger*** | ***Attorneys for Plaintiff MF Global Capital LLC*** |

# CERTIFICATE OF SERVICE

In compliance with Rule 4.l(a) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, I hereby certify that copies of the foregoing Response of Plaintiffs Unipension Fondsmæglerselskab A/S; Arkitekternes Pensionskasse; MP Pension – Pensionskassen for Magistre & Psykologer; Pensionskassen for Jordbrugsakademikere & Dyrlæger and MF Global Capital LLC in Support of Motion for Centralization in the Northern District of Illinois was served on all parties who have appeared electronically via ECF on August 7, 2013, and on the following parties via first class mail on August 8, 2013:

| | |
|---|---|
| BNP Paribas S.A.<br>16 Blvd. des Italien<br>Paris<br>France 75009; | HSBC Bank USA, N.A.;<br>1105 N. Market Street<br>#1<br>Wilmington, DE 19801; |
| Credit Suisse Group AG<br>Paradeplatz 8<br>Zurich<br>Switzerland 8070; | HSBC Holdings PLC<br>8 Canada Square<br>London<br>United Kingdom E14 5HQ; |
| Deutsche Bank AG<br>Taunusanlage 12<br>Frankfurt, Germany 60325; | Morgan Stanley Bank, N.A.<br>1585 Broadway<br>New York, NY 10036; and |
| | Morgan Stanley & Co., LLC<br>1585 Broadway<br>New York, NY 10036. |

                / s / David A. Young
                  David A. Young